UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CICELY MABEN,

       Plaintiff,                         Case No. 1:13-CV-738

v.                                          HON. GORDON J. QUIST

SOUTHWESTERN MEDICAL
CLINIC, P.C., LAKELAND REGIONAL
HEALTH SYSTEM, and LAKELAND
MEDICAL PRACTICES,

       Defendants.
_____/

## **DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Plaintiff, Cicely Maben, worked as a phlebotomist for Defendant Southwestern Medical Clinic, P.C. (Southwestern) until she was terminated in April 2012. Plaintiff, who is African-American, argues that Southwestern terminated her based on her race, and that its asserted reasons are mere pretext. Southwestern contends that it terminated Maben based on a series of disciplinary problems. The Court has reviewed the parties' briefs and held oral argument, and the matter is now ripe for decision. For the following reasons, the Court will grant Defendants' motion.

### **Background**

      Prior to her termination, Maben worked in Southwestern's Stevensville facility. (Dkt. #37-46 at Page ID#693.) Maben's duties included drawing blood from patients and preparing blood specimens in vials for testing. (Dkt. #37-46 at Page ID#706.) Marilyn Hurrle, the facility's manager, supervised Maben.

      Southwestern utilizes a "progressive" discipline policy, that includes the following steps: (1) verbal counseling, (2) a written warning, (3) written warning with suspension, and (4) separation

of employment. (Dkt. #37-12 at Page ID#420-24.) The policy makes clear that the steps are only a guideline, and that a manager may deviate from the steps. (*Id.*)

During 2009 and 2010, Southwestern's management reprimanded Maben for issues with punctuality, and eventually issued a performance improvement plan. (Dkt. #37-46 at Page ID#706; dkt. #35-6 at Page ID#152; dkt. #35-7 at Page ID#155; dkt. #35-8 at Page ID#156.) After receiving the plan, Maben did not have any problem for over a year.

In late 2011, however, Maben began to have issues related to punctuality, attendance, interactions with co-workers, professionalism, and adherence to lab protocols. In early 2012, Hurrle issued Maben a performance evaluation noting that Maben was consistently late for work, needed to be more respectful toward her co-workers, and needed to work on upholding Southwestern's standards for attitude, confidentiality, compassion, and effective communication. (Dkt. #35-15 at Page ID#178-80.) Shortly thereafter, Maben's co-corkers, Jodi Hobson and Mellany Gardiner, told Hurrle that Maben had told Hobson to "get out my face," and that Maben had told Gardiner that "Mexicans are so fucking slow." (Dkt. #35-16 at Page ID#182; dkt. #35-17 at Page ID#184.) In response, Hurrle suspended Maben for the remainder of the day and issued a third-step written warning. (Dkt. #35-19 at Page ID##188-189.) On March 28, 2012, Maben left work early after receiving a phone call from her son's school, and later provided Hurrle with a note from the school stating that her son had left school early without permission. (Dkt. #35-18 at Page ID#186; dkt. #35-19 at Page ID#189; dkt. #35-21 at Page ID#202.) Hurrle testified that Maben originally told Hobson that she had forgotten that her son had a half day of school, and she then told Hurrle that her son was with a friend and had not gone to school. (Dkt. #35-27 at Page ID##381-83; dkt. #35-18 at Page ID#186; dkt. #35-22 at Page ID#204.) On April 10, 2012, Maben failed to follow lab protocol in labeling blood specimens, with the result that two patients' blood samples were mixed up and the patients had to have their blood re-drawn. (Dkt. #35-20 at Page ID##199-200.)

2

On April 20, 2012, Hurrle terminated Maben's employment, citing "inappropriate comments made to co-workers," Maben's "inability to finalize the reason" that her son was home from school early, and failure to follow lab protocol in marking specimens. (Dkt. #35-23 at Page ID#206.)

## Discussion

The general law regarding motions for summary judgment in this type of case, a claim based on circumstantial evidence of discrimination, is clearly set forth in *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703-04 (6th Circ. 2007), and need not be repeated here.[1]

Defendant has given several reasons for terminating Plaintiff, but Plaintiff says that the reasons are mere pretext. A plaintiff may demonstrate pretext by showing that employees outside of the protected class "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2000). The plaintiff "need not demonstrate an exact correlation ... rather, ... the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant aspects*." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted).

There is no issue about whether Plaintiff is a skilled phlebotomist—she is proficient in drawing blood from people. The question is whether her employer, the Defendant, fired Plaintiff because of her race, or because of other aspects of her behavior as an employee—record keeping, punctuality, truth-telling, attendance, racist comments regarding patients, and rudeness towards co-workers. Plaintiff argues that the reasons for the termination are pretextual.

---

[1] Maben claims that Hurrle made a racially derogatory statement to Maben's co-worker, Lisa Doolen, which Doolen relayed to Maben. (Dkt. #35-26 at Page ID#250.) Hurrle testified that she never made the statement, and Doolen testified she has no memory of such a statement or such a conversation with Maben. Accordingly, Doolen's alleged statement to Maben is inadmissible hearsay. *See* Fed. R. Evid. 801. Maben cites no other direct evidence of discrimination.

1.   **Allegations Against Maben By Co-Workers**

Maben argues that Southwestern's asserted reasons for terminating her are pretext because they are based on false accusations that she made inappropriate comments to co-workers and gave shifting explanations as to why she left work early. In evaluating such arguments, the Sixth Circuit employs the "honest belief rule." *See Braithwaite*, 258 F.3d at 493-94. Under that rule,

> the plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action.
>
> In order to determine whether the defendant had an honest belief in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. . . . [T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.* (internal citations and quotation marks omitted).

Maben asserts that Hobson and Gardiner falsely accused her of saying "get out of my face" and "Mexicans are so fucking slow," and that Hurrle's decision to believe them demonstrates pretext. "[E]ven if all of [Maben's] white co-workers did lie . . . [Southwestern] is not liable if it acted upon an honest belief in its non-discriminatory reason and made a reasonably informed and considered decision." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 503 (6th Cir. 2009). Hobson and Gardiner gave Hurrle timely and detailed accounts of their interactions with Maben, and Gardiner was "visibly upset." (Dkt. 37-45 at Page ID#678.) Maben has offered no evidence that Hurrle did not honestly believe the allegations, or that any reliance on the allegations was unreasonable.

Maben further argues that she gave consistent explanations for why she left work early to get her son and that Hurrle's accusation to the contrary was false. Hurrle testified that Hobson told her that Maben said she needed to leave because she had forgotten that her son had a half day of

4

school, and that Maben later told Hurrle that her son had not gone to school. The note from the school, however, said that Maben's son had left school early. Even if there was a misunderstanding, and Maben's explanations had been consistent, there is no evidence that Hurrle did not reasonably rely on an honest belief that Maben's explanation had shifted. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) ("[T]he employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken . . . .") (internal quotation marks omitted). Accordingly, Maben cannot demonstrate pretext by showing that the allegations against her were false.

2. **Comparator Evidence**

Maben also attempts to demonstrate pretext by arguing that similarly situated white co-workers were not terminated. A plaintiff may demonstrate pretext by showing that similarly situated employees were treated more favorably. To demonstrate that the employee was similarly situated, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment," but the person treated more favorably must be similar in all "*relevant* aspects." *Ercegovich*, 154 F.3d at 352 (internal quotation marks omitted). To be considered similarly situated, a plaintiff and the proposed comparator "must have engaged in acts of *comparable seriousness*." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (internal quotation marks omitted). To make that assessment, courts look to factors such as whether the individuals "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks omitted).

Maben argues that three of her co-workers—Gardiner, Hobson, and Shanna Damouth—were similarly situated. Maben contends that both Damouth and Gardiner should have been terminated based on their attendance, and that all three proposed comparators had issues with technical

5

competency and lab errors. Maben points out that Gardiner and Hobson were involved in the April 10 lab error that preceded Maben's termination. Finally, Maben argues that Hobson was rude to co-workers and undertook activities for which she was not trained.

A plaintiff cannot demonstrate pretext merely by showing that employees outside the protected class were not terminated for committing some of the acts that the plaintiff committed. In *Warfield v. Lebanon Correctional Institution*, 181 F.3d 723 (6th Cir. 1999), the Sixth Circuit said that "a hypothetical Title VII plaintiff, terminated for committing acts A, B, C, D and E" cannot "use as her *sole evidence* of pretext the fact that a co-worker outside the protected class was not terminated for committing act B, and another co-worker outside the class was not terminated for committing act E." *Id.* at 730. Rather, the plaintiff would have to show that an employee outside the protected class who "committed acts A, B, C, D, and E (or, perhaps, acts 'comparably serious' to acts A, B, C, D, and E) was not terminated." *Id.*

None of Maben's proposed comparators had all the same disciplinary problems as Maben. Although Damouth and Gardiner had attendance issues, attendance was merely one of the factors that motivated Maben's termination. There is no evidence that Damouth or Gardiner made inappropriate comments to co-workers, or that they provided inconsistent explanations for their absences. Similarly, although Hobson may have had issues in her interactions with co-workers, there is no evidence that she had extensive attendance problems. Maben has not demonstrated that any proposed comparator shared her extensive disciplinary record, or a disciplinary record that included acts of comparable seriousness.

Moreover, although Damouth and Gardiner were involved in the April 10 lab error, Hurrle testified that Maben was the most culpable. (Dkt. #27-45 at Page ID#679.) Although Maben may believe that her co-workers committed more serious lab errors, there is no evidence to support her

6

belief. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (finding that the plaintiff could not demonstrate that other employees were similarly situated because there was no evidence that they were similarly situated "with respect to the severity and frequency of their performance errors" ); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (finding that the plaintiff's allegation that other employees engaged in "different, but what she subjectively believes to be more serious, misconduct" was insufficient to demonstrate conduct of comparable seriousness).

Maben's proposed comparators had some disciplinary problems that were similar to her own, but none had the extensive disciplinary record of Maben or engaged in acts of comparable seriousness. Accordingly, those employees were not similarly situated to Maben, and their treatment cannot be used to demonstrate pretext. See *Braithwaite*, 258 F.3d at 497 (holding that a plaintiff who was fired for violating two of the employer's rules could not demonstrate pretext by showing that other employees were not fired for violating only one of those rules).

### 3.    Other Evidence of Pretext

Maben argues that because Southwestern fired another African-American employee, Carmen Garrett, and hired white employees following Maben's termination, the asserted reasons for her termination must be pretext. The termination of a single African-American employee—particularly in the absence of evidence that such termination was discriminatory—does not demonstrate pretext.[2] Moreover, Southwestern's decision to hire white employees following Maben's termination does not demonstrate an "inexorable zero," *see Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 342 n. 23, 97 S. Ct. 1843, 1858 n.23 (1977), as she contends. Rather, the record demonstrates that

---

[2] Carmen Garrett filed a separate lawsuit alleging claims similar to Maben's. Judge Maloney granted summary judgment in favor of the defendants in that action, concluding that Garrett had failed to demonstrate that the defendants' asserted reasons for her termination were pretext. *Garrett v. Southwestern Med. Clinic*, No. 1:13-cv-634, 2014 WL 7330947 (W.D. Mich. Dec. 19, 2014).

7

Southwestern's workforce was about 11 percent African-American during the relevant time period. (Dkt. #38-2 at Page ID##852-53.)

Finally, Maben argues that Hurrle did not follow the disciplinary policy when she gave Maben a third-step warning following the allegations from Gardiner and Hobson. The record indicates that Maben had previously received a second-step warning and was thus eligible for a third-step warning. Even if that were not the case, however, the policy makes clear that a manager can may bypass the steps. Accordingly, this argument fails.

## Conclusion

The Court concludes that Defendants have provided a legitimate reason for terminating Maben, and Maben has failed to demonstrate that the reason was pretext.[3] Accordingly, Defendants are entitled to summary judgment.

An order consistent with this opinion shall issue.

Dated: January 27, 2015              /s/ Gordon J. Quist
                                     GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE

---

[3] Because Maben has failed to satisfy her burden to show pretext, the Court need not consider the EEOC's determination that Maben had no valid claim or apply the same actor inference.

8